**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE SUBPOENA OF QUALCOMM INCORPORATED | Case No.: 3:25-cv-03197-DMS-VET |
| INTELLECTUAL VENTURES II LLC,<br><br>                    Plaintiff,<br><br>          v.<br><br>TESLA, INC.,<br><br>                    Defendant. | **ORDER DENYING MOTION TO COMPEL THIRD-PARTY SUBPOENA AND GRANTING MOTION TO SEAL**<br><br>**[ECF Nos. 1, 4, 5]** |

Before the Court is Intellectual Ventures II LLC's ("IV") Motion to Compel Rule 30(b)(6) Testimony and Document Production from Third-Party Qualcomm Incorporated. ("Motion to Compel"). ECF No. 4. Therein, IV requests that the Court either transfer the Motion to Compel to the Western District of Texas or, alternatively, compel Qualcomm Incorporated ("Qualcomm") to designate a witness to testify pursuant to Federal Rule of Civil Procedure 30(b)(6).[1] ECF No. 4 at 2–5.[2] IV's related Motion to File Document Under Seal ("Motion to Seal") is also before the Court. ECF No. 5.

---

[1]  Unless otherwise indicated, all references to a "Rule" are to the Federal Rules of Civil Procedure.

[2]  Page numbers for docketed materials refer to those imprinted by the Court's electronic case filing system, not the document's internal pagination.

1

3:25-cv-03197-DMS-VET

For the reasons set forth below, the Court **DENIES** the Motion to Compel and **GRANTS** the Motion to Seal.

I.      FACTUAL AND PROCEDURAL BACKGROUND

   A.      Factual Background

The Motion to Compel arises from a patent infringement action between IV and Defendant Tesla, Inc. ("Tesla"), pending in the Western District of Texas, *Intellectual Ventures II LLC v. Tesla, Inc.*, Case No. 1:24-cv-00884-ADA (the "Underlying Litigation"). ECF No. 4 at 2–3. IV alleges that Tesla infringes several patents through its use of Qualcomm chips and software enabling connectivity. *Id.* IV also asserts that Qualcomm has sole possession of certain source code and technical documents required by IV in the Underlying Litigation. *Id.* According to Qualcomm, Tesla is not its direct customer. ECF No. 8 at 7. Rather, Qualcomm sells chipsets and accompanying software to another company, Quectel Wireless Solutions Co., Ltd. ("Quectel"). *Id.* Quectel loads Qualcomm's software onto Qualcomm chips before installing the chips into cellular modules that Quectel then sells to Tesla for use in Tesla vehicles. *Id.* at 6–8, 13–14. Thus, Qualcomm states, it does not know what version of Qualcomm's software Quectel loads onto the chips, or, indeed, whether the software is unmodified once installed in Tesla vehicles as a component of Quectel's cellular modules. *Id.*

   B.      The Parties' Discovery Dispute

      1.      Rule 45 Subpoenas to Qualcomm

On May 12, 2025, IV served Qualcomm with a Rule 45 subpoena to produce 17 categories of documents and testify on 18 topics. *See* ECF No. 4-2 (Ex. 1 at 7, 17–21). IV served Qualcomm with amended Rule 45 subpoenas on May 16, 2025 and November 3, 2025, respectively. ECF Nos. 4-3 (Ex. 2), 4-4 (Ex. 3). The three subpoenas are substantially similar apart from the addition of Topic No. 19 ("authentication and correlation of source code") to the November 3, 2025 subpoena, and thus IV's latest subpoena includes a total of 17 requests for documents ("RFP") and identifies 19 deposition topics (hereinafter the "Subpoena"). ECF No. 4-4 (Ex. 3 at 19–21).

2

In response, Qualcomm timely objected on various grounds to each RFP and Topic Nos. 1 through 18. *See* ECF No. 8-5 (Ex. B). Qualcomm also notified IV that it was unsure which version of its software Quectel ultimately loaded onto the modules Quectel sold to Tesla, and this information could not be identified without "a valid build ID." ECF No. 8 at 7. IV subsequently provided information purportedly "relevant to Quectel modules and information related to the IDs" but no actual build IDs. *Id.* In response, Qualcomm offered IV software build IDs that Qualcomm's engineering team thought "might have been" used by Quectel.[3] *Id.* Qualcomm also allowed IV to review the relevant software source code for those build IDs at Qualcomm's secure facility over several dates between July 28, 2025 and October 8, 2025. *Id.*; ECF No. 4 at 3.

### 2.    Meet and Confer Efforts

On October 2, 2026, IV requested to meet and confer regarding scheduling a Rule 30(b)(6) deposition. ECF Nos. 8 at 7; 8-11 (Ex. H). The parties met and conferred telephonically on October 22, 2025. ECF No. 8-3 (Decl. of D. Waslif at ¶ 12). During those discussions, IV clarified that the purpose of the deposition would be to authenticate the source code produced by Qualcomm and correlate it with the Qualcomm chips identified by IV. ECF No. 8 at 8. Qualcomm proposed, rather than arranging a deposition, to provide a correlation chart and for IV and Tesla to stipulate to the authenticity of Qualcomm's source code as a Qualcomm business record. ECF No. 4 at 3. IV subsequently sought Tesla's agreement to stipulate to (i) the authenticity of the source code and (ii) "that [the source code] correlates to the chips in Tesla's vehicles." ECF No. 8-14 (Ex. K at 2) (IV email to Tesla, dated October 23, 2026). Tesla confirmed that it agreed in principle but

---

[3]    Qualcomm notes that this list represented its engineers' "best educated guess" based on their prior communications with Quectel and a list of Quectel chips IV identified as having been installed in Tesla vehicles. ECF No. 8 at 7 n.3; *see also* ECF No. 8-1 (Decl. of N. Subramanian at ¶¶ 3–4). Qualcomm cautions, however, that it has no "means to verify whether such software builds were indeed loaded unmodified on to Quectel modules used in Tesla vehicles." ECF No. 8 at 7 n.3.

3:25-cv-03197-DMS-VET

stated that it first wanted to "review the correlation information" provided by Qualcomm. ECF No. 8-15 (Ex. L at 2) (Tesla email to IV, dated October 27, 2026). Qualcomm provided IV and Tesla with the correlation chart on October 28, 2025. ECF Nos. 4 at 3, 4-8 (Ex. 7 at 2). On November 4, 2025, Tesla informed IV that it had reviewed the chart, had no objection to stipulating to authenticity, and requested that IV provide a proposed stipulation. ECF No. 8-17 (Ex. N at 2).

On November 6, 2025, IV provided a proposed stipulation that, according to IV, had Tesla stipulating "that the code produced is relevant to the Qualcomm chips provided in Tesla vehicles and is utilized in Tesla's vehicles." ECF No. 4 at 3–4; *see also* ECF No. 4-9 (Ex. 8 at 2) (IV email to Tesla and Qualcomm attaching draft stipulation).[4] On November 13, 2025, IV produced a second draft of the proposed stipulation. ECF No. 8 at 8. This draft of the proposed stipulation states, *inter alia*, that the Qualcomm source code described in the Joint Stipulation is "representative for all Tesla automotive vehicles that include Quectel cellular modules incorporating Qualcomm's . . . chipsets" and that Qualcomm's source code for certain chipsets "is used in Tesla vehicles without any modification by Tesla." *Id.*; ECF No. 8-19 (Ex. P at 2–5) (draft stipulation). Tesla responded on November 18, 2025 that it did not know to what extent Qualcomm's source code was representative of the software in Tesla's vehicles and was not "in a position to stipulate that Qualcomm's source code is [installed] unmodified" by Quectel. ECF Nos. 8 at 9, 8-20 (Ex. Q at 2). This Motion to Compel followed.[5] ECF No. 4.

On December 19, 2025, Qualcomm sent IV and Tesla a custodial declaration authenticating as Qualcomm business records (i) the non-source code documents Qualcomm produced to IV; (ii) the hardware source code produced by Qualcomm and

---

[4]   The draft of the first proposed stipulation is not before the Court. Thus, the Court relies on IV's description of the content of that proposed stipulation. *See* ECF No. 4 at 3–4.

[5]   IV initially filed a Motion to Enforce Out of District Subpoena on November 18, 2025, and then filed a "corrected" Motion to Compel on November 24, 2025. *See* ECF Nos. 1 (Motion to Enforce), 4 (Motion to Compel).

3:25-cv-03197-DMS-VET

referenced in the correlation chart; and (iii) modem software and firmware source code files produced by Qualcomm and referenced in the correlation chart. ECF Nos. 8-3 (Decl. of D. Waslif at ¶ 24), 8-24 (Ex. U at 3–4, Qualcomm email and custodial declaration).

### 3.    Parties' Positions

IV argues that its subpoenaed deposition topics are relevant and "will impose minimal burden on Qualcomm." ECF No. 4 at 4; *see also* ECF No. 13 at 2–5. IV contends that "topics regarding the functionality of Qualcomm source code and what Qualcomm provides to Quectel are relevant and exclusively within Qualcomm's knowledge." ECF No. 13 at 4. IV additionally requests that the Court transfer the Motion to Compel to the court overseeing the Underlying Litigation in the Western District of Texas pursuant to Rule 45(f) (hereinafter "Request to Transfer"). ECF No. 4 at 4.

In opposition, Qualcomm argues that IV failed to discharge its meet-and-confer obligations prior to bringing the Motion to Compel and, on that basis, the Motion should be denied. ECF No. 8 at 9–10. Qualcomm also notes that it supplied IV with a custodial declaration authenticating Qualcomm's documents and source code, alleviating any need to depose a Qualcomm representative for authentication purposes. *Id.* at 10–11.

Qualcomm next identifies various grounds why it should not be compelled to designate a Rule 30(b)(6) witness to "establish that the Source Code produced by Qualcomm is utilized in Tesla vehicles." *Id.* at 11. First, IV failed to serve a subpoena requesting a deposition on the subject or explain with sufficient specificity how its requested relief ties to a subpoena topic. *Id.* at 11–13. Second, Qualcomm does not have knowledge or reasonably available information on this topic because Quectel, not Qualcomm, loads Qualcomm software onto the chips it sells to Tesla. *Id.* at 11, 13–14. Third, IV's request is not reasonably calculated to lead to discovery of admissible evidence because Qualcomm engineers lack personal knowledge of the issue. *Id.* at 11, 14–15. Fourth, the burden and expense of the proposed deposition outweigh its likely benefit. *Id.* at 11, 15–16. Lastly, Qualcomm argues that IV's request improperly seeks opinion testimony from an unretained expert because a Qualcomm engineer would have to

3:25-cv-03197-DMS-VET

speculate based on their expertise whether Quectel used Qualcomm source code in the products they provided to Tesla, rather than testifying from their personal knowledge. *Id.* at 11, 16–17. Qualcomm also opposes the Request to Transfer, arguing that no exceptional circumstances exist justifying a transfer. *Id.* at 17–18.

## II.   LEGAL STANDARD

### A.   Federal Rule of Civil Procedure 26

Rule 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1). Relevance under Rule 26(b) is broadly defined. *In re Bank of Am. Cal. Unemployment Bens. Litig.*, No. 21-md-2992-GPC-MSB, 2024 U.S. Dist. LEXIS 111988, at *20 (S.D. Cal. June 25, 2024). And in evaluating proportionality, the Court considers the following factors: (i) "importance of the issues at stake in the action," (ii) "the amount in controversy," (iii) "the parties' relative access to relevant information," (iv) "the parties' resources," (v) "the importance of the discovery in resolving the issues," and (vi) "whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." *Id.* The Court, however, may limit discovery on motion or *sua sponte* if it is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;" or if the party who seeks discovery "has had ample opportunity to obtain the information by discovery;" or if "the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).

If a party fails to provide requested discovery or a response is evasive or incomplete, the propounding party may move to compel an answer, designation, or production. Fed. R. Civ. P. 37(a)(1)–(3). In a motion to compel discovery, the moving party has the initial burden of demonstrating relevance and why the responding party's objections lack merit. *Bean v. Walmart Inc.*, No. 24-cv-08871-CAS (RAOx), 2026 U.S. Dist. LEXIS 47299, at *3 (C.D. Cal. Jan. 9, 2026); *Owen v. Hyundai Motor Am.*, 344 F.R.D. 531, 535 (E.D. Cal.

3:25-cv-03197-DMS-VET

2023). In turn, the party opposing discovery has the burden of showing that discovery should not be allowed, and the burden of clarifying, explaining and supporting its objections. *Owen*, 344 F.R.D. at 535. "Unsupported assertions that discovery requests are overbroad, burdensome, or disproportionate are insufficient" to resist discovery. *Soler v. Cty. of San Diego*, No. 14-cv-2470-MMA-RBB, 2016 U.S. Dist. LEXIS 197050, at *22 (S.D. Cal. July 18, 2016).

**B.      Federal Rule of Civil Procedure 30**

Rule 30 permits a party to depose any person and compel the deponent's attendance by subpoena under Rule 45. Fed. R. Civ. P. 30(a)(1). Further, pursuant to Rule 30(b)(6), a party may name an organization as a deponent, but "must describe with reasonable particularity the matters for examination." Fed. R. Civ. P. 30(b)(6). "For Rule 30(b)(6) to effectively function, the requesting party must take care to designate, with painstaking specificity, the particular subject areas that are intended to be questioned, and that are relevant to the issues in dispute." *3D Sys., Inc. v. Wynne*, No. 21-cv-1141-AGS-DDL, 2026 U.S. Dist. LEXIS 76606, at *6–7 (S.D. Cal. Apr. 7, 2026) (citations and quotations omitted). The named organization is then obligated to designate "one or more" persons to testify on its behalf. Fed. R. Civ. P. 30(b)(6). Each designee must prepare for their deposition and "testify about information known or reasonably available to the organization" such that they can "fully and unevasively answer questions about the designated subject matter." *Bd. of Trs. of the Leland Stanford Junior Univ. v. Tyco Int'l Ltd.*, 253 F.R.D. 524, 525–26 n.1 (C.D. Cal. 2008); *see also* Fed. R. Civ. P. 30(b)(6). Rule 30(b)(6) thus "imposes reciprocal obligations on proponent and deponent: the proponent must specify which subject matters it intends to inquire into, and the deponent must take affirmative steps to learn about those topics." *Coppel v. Sea World Parks & Ent., Inc.*, No. 21-cv-1430-RSH-DDL, 2024 U.S. Dist. LEXIS 186847, at *20 (S.D. Cal. Aug. 19, 2024). A party seeking to depose an organization under Rule 30(b)(6) may move to compel a designation where the organization fails to make such a designation. Fed. R. Civ. P. 37(a)(3)(B)(ii).

3:25-cv-03197-DMS-VET

## C.     Federal Rule of Civil Procedure 45

Rule 45 governs discovery of nonparties by subpoena and permits a party or attorney to issue a subpoena commanding a person to attend a deposition. Fed. R. Civ. P. 45(c)(1). The party or attorney, however, must take reasonable steps to avoid imposing undue burden or expense on the person subject to the subpoena. Fed. R. Civ. P. 45(d)(1). Thus, Rule 45(d) also authorizes "the court for the district where compliance is required" to quash or modify a subpoena that "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3).

In determining whether a subpoena is unduly burdensome, courts weigh "the burden imposed on the party subject to the subpoena . . . , the relevance of the information sought to the claims or defenses at issue, the breadth of the discovery request, and the litigant's need for the information." *Malibu Media, LLC v. Doe*, No. 16-cv-444-GPC-BGS, 2016 U.S. Dist. LEXIS 168657, at *3 (S.D. Cal. Dec. 6, 2016). The scope of discovery under Rule 45 is the same as the scope under Rule 26(b). *Ow v. United States*, No. 17-cv-00733-SK, 2018 U.S. Dist. LEXIS 227748, at *2 (N.D. Cal. June 12, 2018).

The Court may also apply extra protections when discovery is sought from nonparties. *See High Tech Med. Instr., Inc. v. New Image Ind., Inc.*, 161 F.R.D. 86, 88 (N.D. Cal. 1995) ("the Ninth Circuit has long held that nonparties subject to discovery requests deserve extra protection from the courts"); *see also Century Sur. Co. v. Master Design Drywall, Inc.*, No. 09-cv-0280-LAB-AJB, 2010 U.S. Dist. LEXIS 53831, at *3 (S.D. Cal. June 1, 2010) ("Underlying the protections of Rule 45 is the recognition that the word 'non-party' serves as a constant reminder of the reasons for the limitations that characterize 'third-party' discovery.") (citations and quotations omitted); *Kim v. NuVasive, Inc.*, No. 11-cv-1370-DMS-NLS, 2011 U.S. Dist. LEXIS 96878, at *6–7 (S.D. Cal. Aug. 29, 2011) ("Non-parties deserve extra protection from the courts."). A court should not unnecessarily restrict discovery, but a court may allow broader restrictions "when a nonparty is the target of discovery." *Dart Indus. Co., Inc. v. Westwood Chem. Co., Inc.*, 649 F.2d 646, 649 (9th Cir. 1980).

Further, Rule 45(f) allows a court to transfer a subpoena-related motion to the subpoena-issuing court in "exceptional circumstances." Fed. R. Civ. P. 45(f) ("When the court where compliance is required did not issue the subpoena, it may transfer a motion . . . to the issuing court if the person subject to the subpoena consents or if the court finds exceptional circumstances."). The party seeking transfer bears the burden of demonstrating that exceptional circumstances exist. Fed. R. Civ. P. 45, Advisory Committee Notes on 2013 Amendments; *see also Doe v. Guillod*, No. 22-mc-103-JLS-PD, 2023 U.S. Dist. LEXIS 86034, at *5–6 (C.D. Cal. Mar. 6, 2023). In considering whether to transfer under Rule 45(f), a court may evaluate the following factors related to the underlying litigation: complexity, procedural posture, duration of pendency, and nature of the issues pending before, or already resolved by, the issuing court in the underlying litigation. *E4 Strategic Solutions, Inc. v. Pebble Ltd. P'ship*, SA MC 15-00022-DOC, 2015 U.S. Dist. LEXIS 191686, at *6 (C.D. Cal. Oct. 23, 2015).

## III.   DISCUSSION

### A.   Request to Transfer

IV requests that the Court transfer the Motion to Compel to the Western District of Texas. ECF No. 4 at 4. The Court finds that IV fails to meet its burden of demonstrating that exceptional circumstances warrant a transfer.

Other than requesting a transfer to the Western District of Texas, IV sets forth neither facts nor case law showing that exceptional circumstances exist that support a transfer. *See* ECF No. 4 at 5; *see generally* ECF No. 13. Further, Qualcomm does not consent to a transfer. ECF No. 8 at 17. Accordingly, in the absence of consent and any information to support a transfer, the Court **DENIES** IV's request to transfer the Motion to Compel. *See, e.g.*, *Doe*, 2023 U.S. Dist. LEXIS 86034, at *7–9 (denying request to transfer where movant made conclusory statements regarding exceptional circumstances but pointed to no specific evidence thereof).

3:25-cv-03197-DMS-VET

**B.    Motion to Compel**

    **1.    Scope of Dispute**

Before turning to the merits of the Motion to Compel, the Court must define the scope of the dispute because IV is unclear as to the specific relief it seeks. IV first requests that Qualcomm "(1) produce a witness for a limited-scope Rule 30(b)(6) deposition and to authenticate and establish the business-record status of documents and source code produced by Qualcomm, and (2) to the extent it has not already done so, produce documents relevant to the functionality provided by Qualcomm on Tesla vehicles." ECF No. 4 at 2. IV next indicates that it seeks "a limited-scope Rule 30(b)(6) deposition of Qualcomm to testify concerning the chips provided by Qualcomm to Tesla in Tesla vehicles and establish that the Source Code produced by Qualcomm is utilized in Tesla vehicles." *Id.* at 3. However, IV also indicates that it "seeks only limited testimony to establish authenticity and business-record status for trial and to confirm the source code is present and functional in Tesla vehicles." *Id.* at 4. And in conclusion, IV requests an order compelling Qualcomm to "designate a Rule 30(b)(6) witness related to the noticed topics and to authenticate the source code." *Id.* at 5. The breath and scope of these various requests are substantially different and impose distinct burdens. Moreover, at no point does IV identify which, if any, RFP or deposition topic is at issue, nor advance arguments specific to any RFP or noticed topic. *See generally* ECF Nos. 4, 13. Accordingly, the Court must guess as to the specific relief IV seeks.

Beginning with the issue of documents, IV fails to identify which, if any, RFP it seeks to compel a further response, why any response thereto is inadequate, or how Qualcomm's production is deficient. *See generally* ECF Nos. 4, 13. In fact, the only representation IV makes concerning documents is a general request that, "to the extent it has not already do so," Qualcomm "produce documents relevant to the functionality provided by Qualcomm on Tesla vehicles." ECF No. 4 at 2. This type of generalized request is inadequate.

As the moving party, IV has the initial burden of proof. This requires that IV inform this Court which discovery requests are the subject of the Motion to Compel, and, for each disputed response, why the information sought is relevant and why Qualcomm's objections, if any, are not meritorious or its production is deficient. *See Tran v. Young*, No. 2:17-cv-1260 MCE DB P, 2020 U.S. Dist. LEXIS 3137, at *6 (E.D. Cal. Jan. 7, 2020); *see also Cent. Valley Eden Env't Defs., LLC v. Sweetener Prods.*, No. 2:25-cv-00078-WBS-CSK, 2026 U.S. Dist. LEXIS 108027, at *13 (E.D. Cal. May 15, 2026); *Chester v. King*, No. 1:16-cv-01257-DAD-GSA-PC, 2019 U.S. Dist. LEXIS 144822, at *11 (E.D. Cal. Aug. 26, 2019) ("At a minimum, as the moving party Plaintiff bears the burden of informing the court (1) which discovery requests are the subject of his motion to compel; (2) which of Defendant's responses are disputed; (3) why he believes Defendant's responses are deficient; (4) why Defendant's objections are not justified; and (5) why the information he seeks through discovery is relevant to the prosecution of this action."). Because IV fails to identify any RFPs at issue and any grounds for compelling a further response or production to any RFP, the Court **DENIES** IV's general request to compel the production of documents. *See James v. Lee*, No. 16-cv-01592-TWR-JLB, 2021 U.S. Dist. LEXIS 103726, at *12 (S.D. Cal. June 2, 2021) ("Without first identifying what discovery he seeks to compel, Plaintiff cannot possibly meet his burden to show that he has requested relevant and proportional discovery from Defendant."); *Varsity Gold, Inc. v. Bigham*, No. C06-509RSM, 2007 U.S. Dist. LEXIS 41863, at *8–9 (W.D. Wash. May 30, 2007) (denying motion to compel where the moving party failed to identify any specific deficiencies in the non-moving party's discovery responses).

For the same reasons, to the extent IV generally requests a Rule 30(b)(6) deposition "related to the noticed topics," the Court **DENIES** this request. *See* ECF No. 4 at 5. IV does not articulate any arguments demonstrating, with any specificity, why *each* of the Subpoena's 19 deposition topics seeks relevant information. As such, this general request is insufficient to compel a Rule 30(b)(6) deposition as to each "noticed topic."

3:25-cv-03197-DMS-VET

Nevertheless, it is clear IV seeks to compel deposition testimony from Qualcomm relating to the Qualcomm chips and source code used in Tesla vehicles. At this juncture, despite the lack of clarity in IV's moving and reply papers, the Court will take IV at its word, that "[s]pecifically, IV seeks: (1) a limited-scope Rule 30(b)(6) deposition of Qualcomm to testify concerning the chips provided by Qualcomm to Tesla in Tesla vehicles and establish that the Source Code produced by Qualcomm is utilized in Tesla vehicles." ECF No. 4 at 3. Moreover, given IV's arguments and the parties' meet and confer discussions, it is also evident IV seeks a Rule 30(b)(6) deposition to authenticate certain business records and source code produced by Qualcomm. *See, e.g.,* ECF No. 4 at 2 ("IV requests that this Court compel Qualcomm to [] produce a witness . . . to authenticate and establish the business-record status of documents and source code produced by Qualcomm."); *see also* ECF Nos. 8-3 (Decl. of D. Waslif at ¶¶ 12–19) (describing IV's requests for a deposition to authenticate Qualcomm's source code throughout meet-and-confer efforts), 8-22 (Ex. S at 2–3) (email from Qualcomm to IV describing Qualcomm's understanding of IV's deposition request). Accordingly, the Court will address each of these topics in turn.

### 2.    Meet and Confer Obligations

Having defined the scope of the dispute, the Court next addresses Qualcomm's argument concerning IV's purported failure to properly meet and confer prior to filing the instant Motion. *See* ECF No. 8 at 9–10.

Qualcomm is correct that both this Court's Local Rules and the undersigned's Chambers Rules require that the parties thoroughly meet and confer before raising discovery disputes with the Court. *See* CivLR 26.1(a); J. Torres Civ. Chambers R. VIII.D. Similarly, Rule 37 requires that the moving party certify that it met and conferred in good faith with the relevant party to obtain, without court action, the discovery at issue. Fed. R. Civ. P. 37(a)(1).

Here, the record shows that significant meet and confer efforts occurred generally concerning a Rule 30(b)(6) deposition of Qualcomm. *See, e.g.,* ECF Nos. 4 at 3–4, 8-3

12

3:25-cv-03197-DMS-VET

(Decl. of D. Waslif at ¶¶ 10–20). However, it is not clear that IV adequately met and conferred concerning the specific testimony it now seeks. Specifically, the record indicates that IV, Tesla, and Qualcomm discussed resolving this dispute via stipulation, and IV provided a draft stipulation on November 6, 2025. ECF No. 4-9 (Ex. 8 at 2). The text of this initial proposed stipulation is not before the Court, but email correspondence confirms that Tesla agreed in principle with a proposal by Qualcomm to "a stipulation on the authenticity of Qualcomm's source code and non-source code documents." ECF No. 8-15 (Ex. L at 2). Qualcomm further proposed providing information that correlated the source code produced in the case with the at-issue Qualcomm chip products and, following its review of the correlation information, Tesla confirmed that it had no objection to stipulating to authenticity and requested a draft stipulation. *See* ECF Nos. 8-13 (Ex. J), 8-15 (Ex. L), 8-17 (Ex. N). On November 7, 2025, IV, Qualcomm, and Tesla also participated in a call during which Tesla "reiterated that it was willing to stipulate to the authenticity of Qualcomm's source code and documents in lieu of a deposition but was waiting for an updated draft stipulation from IV." ECF No. 8-3 (Decl. of D. Waslif at ¶ 18).

None of the email correspondence references any proposal or agreement to stipulate that the source code produced by Qualcomm is representative for all Tesla vehicles using Quectel modules or is used in Tesla vehicles without modification, or any similar statements. *See, e.g.*, ECF Nos. 8-13 (Ex. J), 8-14 (Ex. K), 8-15 (Ex. L), 8-16 (Ex. M), 8-17 (Ex. N). Nevertheless, a draft stipulation prepared by IV and circulated to Tesla on November 13, 2025 includes statements to that effect. ECF No. 8-19 (Ex. P at 5). As such, Tesla rejected it. ECF No. 8-20 (Ex. Q).

Qualcomm argues that IV "never attempted to meet and confer about whether Tesla would stipulate to authenticity of the Qualcomm source code independent of the other" statements proposed in the November 13 draft stipulation. ECF No. 8 at 10 (emphasis removed). The Court agrees. Nothing in the record indicates that Tesla rejected or would reject a stipulation concerning only the authenticity of Qualcomm's source code or non-source code documents. Instead, the record shows that Tesla agreed to stipulating to

3:25-cv-03197-DMS-VET

authenticity and assumed that IV would show Tesla the same reciprocity with respect to documents produced by Qualcomm, HP, and Samsung to Tesla. *See* ECF No. 8-15 (Ex. L). Thus, if IV had met and conferred further with Tesla and Qualcomm on this issue alone, the record suggests agreement could have been reached.

Moreover, it is not evident that after Tesla rejected IV's November 13 draft stipulation that IV attempted to meet and confer with Qualcomm on the issue of Qualcomm's source code in Tesla vehicles. Rather than engaging in *and exhausting* such meet and confer efforts, IV filed the instant Motion and then tried to resolve the dispute. Indeed, at the time it filed its reply, IV indicates that it was "currently communicating with nonparty Qualcomm to resolve the need for a deposition." *See* ECF No. 13 at 2 n.1. That communication should have occurred *before* IV filed the Motion to Compel.

However, apart from the issue of authenticity, it is not clear that further meet and confer efforts would have resolved the Motion to Compel in its entirety. IV, Qualcomm, and Tesla have had additional time since the filing of the Motion to Compel to meet and confer further. Despite Qualcomm's production of a declaration establishing the authenticity of the source code and documents produced by Qualcomm, IV has not withdrawn the Motion to Compel. *See* ECF No. 8-24 (Ex. U, Qualcomm December 19, 2025 email and attached custodial declaration). IV also confirms in its Reply that it seeks to not only authenticate the source code but also information about the "operational use" of the source code in Tesla vehicles. ECF No. 13 at 3. Given Qualcomm's position that it has no information on this topic, IV and Qualcomm appear to be at an impasse. *See* ECF No. 8 at 13–14.

Under these circumstances, the Court is satisfied that additional meet and confer efforts would not serve the underlying purpose of the meet and confer rule. *See Wright v. Gringo*, No. 17-cv-01996-BAS-MSB, 2019 U.S. Dist. LEXIS 185473, at *6 (S.D. Cal. October 25, 2019) (purpose of meet-and-confer requirement is to "see whether [litigants] can resolve [disputes] without court intervention, saving time and money"); *Castillo v. Bank of Am. N.A.*, No. 8:17-cv-00580-DOC-KESx, 2018 U.S. Dist. LEXIS 226851, at *4

3:25-cv-03197-DMS-VET

(C.D. Cal. September 28, 2018) (adjudicating motions to compel despite movant's failure to fully comply with meet-and-confer obligation where compliance would not have aided resolution of the dispute, parties had met and conferred prior to movant filing, and important case deadline was imminent). Further, denying the Motion to Compel based on a failure to meet and confer would only delay the Court's resolution of the underlying matter. *Marine Grp., LLC v. Marine Travelift, Inc.*, No. 10-cv-00846-BTM-KSC, 2012 U.S. Dist. LEXIS 49064, at *6–7 (S.D. Cal. April 6, 2012) (adjudicating motion to compel where movant had not met and conferred prior to filing motion). Therefore, the Court will address the merits of the Motion to Compel.

### 3.   Testimony Regarding Chips and Source Code in Tesla Vehicles

The Court turns first to testimony regarding Qualcomm's technology. As articulated in the Motion, IV seeks testimony relating to two topics: (1) "the chips provided by Qualcomm to Tesla in Tesla vehicles" ("Chip Testimony") and (ii) "establish[ing] that the Source Code produced by Qualcomm is utilized in Tesla vehicles" ("Source Code Testimony") (collectively the "Technology-Related Testimony").[6] ECF No. 4 at 3. Because IV fails to identify which, if any, subpoenaed deposition topic is at issue, it is not immediately evident whether the Technology-Related Testimony corresponds to any of the deposition topics. Furthermore, Qualcomm objects to any attempt by IV to expand the scope of the Subpoena by rephrasing its deposition topics or introducing new topics, noting that "a motion to compel cannot be used as a vehicle to broaden a subpoena." ECF No. 8 at 13 (quoting *4Demand, LLC v. G4S Secure Sols., Inc.*, No. 9:20-mc-80637-WPD/WM, 2020 U.S. Dist. LEXIS 106338, at *10 (S.D. Fla. June 17, 2020)). Because Rule 30(b)(6) requires that a party seeking a deposition describe with reasonable particularity the matters for examination, the Court agrees that a motion to compel is not an opportunity to expand

---

[6]   In its reply, IV recharacterizes again the deposition it seeks, suggesting it seeks testimony concerning the "functionality and operation of Qualcomm chips that may operate in Tesla vehicles." ECF No. 13 at 2.

3:25-cv-03197-DMS-VET

the scope of the Subpoena or otherwise introduce new topics. *See Layton v. Green Valley Vill. Cmty. Ass'n*, No. 2:14-cv-1347-GMN-EJY, 2024 U.S. Dist. LEXIS 53419, at *6 (D. Nev. Mar. 26, 2024) ("In order to take the deposition of a business entity (as opposed to individual percipient witnesses), the deposition must be noticed in compliance with Federal Rule of Civil Procedure 30(b)(6)."). Thus, the Court considers at the outset whether any of the Subpoena's deposition topics capture the Technology-Related Testimony.

Based on a review of those topics, Topic No. 6 seems the most relevant with respect to the Chip Testimony. ECF No. 4-4 (Ex. 3 at 20). Topic No. 6 seeks testimony regarding "how the Qualcomm Chips operate in Tesla products," including "how the Qualcomm Chips may be used to implement the Patented Technology in the Accused Products," *e.g.*, Tesla vehicles.[7] A plain reading of Topic No. 6 includes the requested Chip Testimony, and Qualcomm does not argue otherwise. In fact, Qualcomm does not address the Chip Testimony in any significant way, focusing its arguments instead on the Source Code Testimony. *See generally* ECF No. 8 at 12–17. Accordingly, the Court finds that the Subpoena, and specifically Topic No. 6, captures the Chip Testimony.

The same cannot be said for the Source Code Testimony. No topic expressly seeks testimony establishing that "the source code produced by Qualcomm is utilized in Tesla vehicles." And while Topics Nos. 15 and 19 refer to the origin, author, authenticity, and/or "authentication and correlation" of "source code," neither captures the Source Code Testimony specifically.[8] Additionally, Qualcomm emphasizes that Topic No. 6, which in

---

[7] The Subpoena defines "Qualcomm Chip" as "semiconductor devices, including hardware and associated software designed, manufactured and/or sold by or on behalf of Qualcomm that ha[ve] been used, [are] currently used, or will be used, in any Accused Product and that ha[ve] a role in the Patented Technology, [including] the components that Qualcomm supplies to Tesla for use in Tesla products." ECF No. 4-4 (Ex. 3 at 14).

[8] The Subpoena defines "Source Code" as "the human-readable form of a computer program written in high level or assembly language," "includ[ing] html files; xml files;

3:25-cv-03197-DMS-VET

its view comes "closest" to including the Source Code Testimony, does not in fact capture this requested testimony. ECF No. 8 at 12. According to Qualcomm, how Qualcomm chips operate is not the same as establishing that the source code produced by Qualcomm actually is loaded into Quectel modules that are then used in Tesla vehicles. *Id.* The Court agrees, and IV presents no argument explaining why or how the Source Code Testimony falls within Topic No. 6 or any other topic in the Subpoena. Thus, the Court finds that the Source Code Testimony does not correspond to any deposition topic in the Subpoena. This finding alone is sufficient to deny IV's request to compel a deposition regarding the Source Code Testimony. *See Layton*, 2024 U.S. Dist. LEXIS 53419, at *7 (holding that failure to serve defendant with a notice of deposition describing "with reasonable particularity" topics on which plaintiff moved to compel testimony was alone sufficient to deny motion to compel Rule 30(b)(6) designation).

Still, even assuming the Technology-Related Testimony in its entirety corresponds to a subpoenaed deposition topic, the Court is not persuaded that Qualcomm should be compelled to designate a Rule 30(b)(6) witness. IV argues at length that the testimony sought is relevant to its claims. ECF Nos. 4 at 4, 13 at 2–4. Even if that is the case, Qualcomm demonstrates that the information IV seeks is not reasonably available to Qualcomm, and IV presents no argument or evidence to the contrary

"The testimony of a Rule 30(b)(6) designee represents the knowledge of the corporation, not of the individual deponents." *Attia v. Ouraring Inc.*, No. 23-cv-03433-HSG (LJC), 2025 U.S. Dist. LEXIS 221777, at *4 (N.D. Cal. Nov. 10, 2025). As such, "corporate parties have an obligation to present witnesses who are capable of providing testimony on the noticed topics regardless of whether the information [is] in the witness's

source code listings; compiler and/or assembler output listings for such source code; [and] source code listings for macros" as well as "both executable and mapping listings used in such source code; job control language files; and/or other files required to create an executable version of a program, including user interface components; panels; screen definitions and help text; and c-lists." ECF No. 4-4 (Ex. 3 at 14–15).

personal knowledge, *provided that the information is reasonably available to the corporation.*" *U.S. v. HVI Cat Canyon, Inc.*, No. CV 11-5097 FMO (SSx), 2016 U.S. Dist. LEXIS 200353, at *17–18 (C.D. Cal. Oct. 26, 2016) (emphasis added)*; see also Bd. of Trs. of the Leland Stanford Junior Univ.*, 253 F.R.D. at 526 (Rule 30(b)(6) deponent only required to designate witnesses on matters on which information is at least reasonably available to organization). Here, IV seeks testimony about how or whether Qualcomm's technology (in the form of its chips and source code) functions and/or is used in Tesla vehicles. Except Quectel is Qualcomm's customer, not Tesla. ECF No. 8-1 (Decl. of N. Subramanian at ¶ 2). And as Qualcomm's Senior Director of Engineering explains, "Qualcomm sells chips to Quectel and makes available multiple software builds (or versions, each designated by a unique build ID) that Quectel could choose to load onto its cellular modules that use Qualcomm's chips." ECF No. 8 at 13, *see* ECF No. 8-1 (Decl. of N. Subramanian at ¶¶ 3–4). In other words, "Qualcomm does not load software onto its customers' devices, its customers do." ECF No. 8-1 (Decl. of N. Subramanian at ¶ 4). This means that *only* Quectel, and not Qualcomm, can definitively state which available builds or source code Quectel loads onto its cellular modules and then sells to Tesla. *See id.* The same is presumably true relating to Qualcomm's chips and how, as part of Quectel's products, they operate in Tesla vehicles. Thus, the testimony IV seeks requires knowledge as to how Quectel incorporates Qualcomm's chips and source code, including any modifications thereto, into Quectel's cellular modules that ultimately find their way into Tesla vehicles. Such information seems to be exclusively within the knowledge of Quectel, not Qualcomm, and Qualcomm confirms as much. *Id.*

Critically, IV sets forth no information to contradict or rebut Qualcomm's representations that only Quectel has the information IV seeks. *See generally* ECF Nos. 4, 13. For instance, IV does not argue or demonstrate that Qualcomm has a direct relationship with Tesla or present any information showing why IV believes Qualcomm can testify as to how Quectel uses and/or incorporates Qualcomm's chips and source code in the cellular modules that Quectel manufactures and ultimately delivers to Tesla. Nor does IV address

18

any of the objections that Qualcomm raised to the various deposition topics. *See generally* ECF Nos. 4, 13; *see also* ECF No. 8-5 (Ex. B, Qualcomm Responses and Objections). Instead, IV simply argues that Tesla vehicles incorporate Qualcomm's chips and that Qualcomm produced source code "concerning those chips." ECF No. 13 at 3. Neither of those representations persuade the Court that the information sought via the Technology-Related Testimony is reasonably available to Qualcomm. First, to the extent Qualcomm chips find their way into Tesla vehicles, they do so via components, *i.e.*, cellular modules, manufactured by Quectel, not Qualcomm. Therefore, it is not evident how Qualcomm can testify to the functionality of those chips in Tesla vehicles without having intimate knowledge of Quectel's products and how those products are manufactured and subsequently function in Tesla vehicles. Second, while Qualcomm produced source code and attempted to correlate certain source code to certain builds, Qualcomm admits it was making an educated guess and has no means of verifying what Quectel actually loaded onto cellular modules used in Tesla vehicles. ECF No. 8-1 (Decl. of N. Subramanian at ¶ 4). Again, the only party seemingly suited to testify on these subjects is Quectel. Under these circumstances, the Court finds that the information sought is not reasonably available to Qualcomm.

Further, because Qualcomm is a third party, the Court is sensitive to imposing any undue burden on Qualcomm. Short of approaching Quectel, an unrelated third party, and requesting that Quectel disclose to Qualcomm what is likely sensitive trade secret information, it seems next to impossible for Qualcomm to prepare a witness to testify as to how its chips function in Tesla vehicles or confirm that the source code, as produced by Qualcomm (without any modification), is in fact used in Tesla vehicles. This scenario also risks forcing Qualcomm to provide what amounts to unretained expert testimony concerning Quectel's products, which would be inappropriate. *See, e.g., Apple Inc. v. Qualcomm Inc.*, No. 3:17-cv-00108-GPC-MDD, 2018 U.S. Dist. LEXIS 137539, at *22–24 (S.D. Cal. Aug. 14, 2018). The Court sees no benefit to compelling a deposition where the witness will confirm what Qualcomm has already attested to in declarations supporting

3:25-cv-03197-DMS-VET

its Opposition. This is especially true here, where IV has done little to carry its burden, including failing to (i) identify the deposition topic(s) at issue, (ii) address Qualcomm's objections to each deposition topic, (iii) rebut Qualcomm's representations that Quectel is the only entity that can provide the requested testimony, or (iv) otherwise explain, with any specificity, why Qualcomm, and not Quectel, should provide the requested testimony.

Accordingly, the Court **DENIES** the Motion to Compel a deposition regarding the Technology-Related Testimony. *See, e.g.*, *Luken v. Christensen Grp. Inc.*, No. C16-5214 RBL, 2018 U.S. Dist. LEXIS 71399, at *8 (W.D. Wash. Apr. 27, 2018) (holding that defendant's 30(b)(6) designees were not required to familiarize themselves with topics that were unrelated to their organization because Rule 30(b)(6) "does not require one entity which is not under the control of a second entity to inquire into and testify as to the knowledge of the second entity"); *Santa Clarita Valley Water Agency v. Whittaker Corp.*, No. CV 18-06825-GW-(RAOx), 2020 U.S. Dist. LEXIS 251110, at *28–29 (C.D. Cal. July 9, 2020) (finding that to the extent information was not already within its knowledge or in a document reasonably available to it, the third-party defendant was not obligated to prepare a Rule 30(b)(6) deponent to answer a topic seeking information that might only be within the knowledge of another entity).

### 4. Testimony Regarding Authenticity of Qualcomm's Production

IV also seeks testimony authenticating the source code and non-source code documents that Qualcomm produced. However, Qualcomm has already authenticated all documents, source code, and software produced to IV by providing a custodial declaration. *See* ECF No. 8-24 (Ex. U at 3–4). Nowhere in its Reply does IV provide any reason why Qualcomm's custodial declaration is insufficient to authenticate Qualcomm's productions. *See generally* ECF No. 13; *see also* Fed. R. Evid. 901(a) ("To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is."). Furthermore, as noted, Tesla agreed repeatedly in email correspondence that it would stipulate to the authenticity of Qualcomm's source code and non-source code documents.

3:25-cv-03197-DMS-VET

*See, e.g.*, ECF Nos. 8-15 (Ex. L), 8-17 (Ex. N), 8-20 (Ex. Q). Given these facts, the Court finds a deposition relating to authenticity is duplicative and unduly burdensome. Therefore, the Court **DENIES** the Motion to Compel a deposition for purposes of authenticating this information. *See* Fed. R. Civ. P. 26(b)(1). If it believes a stipulation is necessary, IV can approach Tesla regarding a formal stipulation concerning the sole issue of authenticating Qualcomm's source code and non-source code documents, which IV failed to do prior to filing this Motion to Compel.

### C.     Motion to Seal

In the Motion to Seal, IV seeks leave to file Exhibit 8 to its Motion to Compel under seal (hereinafter "Exhibit 8"). ECF Nos. 4-9 (Ex. 8), 5 (Motion to Seal), 6 (unredacted exhibit lodged under seal). In support thereof, IV states that Exhibit 8 contains information Qualcomm designated as "Attorneys' Eyes Only" and subject to a protective order in the Underlying Litigation. ECF No. 5 at 2. Qualcomm does not oppose the Motion to Seal. *Id.*

"[T]he courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978). "Unless a particular court record is one 'traditionally kept secret,' a 'strong presumption in favor of access' is the starting point." *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (quoting *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003)). "The presumption of access is 'based on the need for federal courts, although independent—indeed, particularly because they are independent—to have a measure of accountability and for the public to have confidence in the administration of justice.'" *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1096 (9th Cir. 2016). A party seeking to seal a judicial record bears the burden of overcoming this strong presumption of access. *Foltz*, 331 F.3d at 1135.

To overcome the presumption of access, the party must demonstrate either "good cause" or "compelling reasons" to seal a record, depending on the motion to which the record relates. *Ctr. for Auto Safety*, 809 F.3d at 1096–97. If the underlying motion is more than tangentially related to the merits, the "compelling reasons" standard applies. *Id*. at

1096–99. When the underlying motion does not surpass this threshold, the "good cause" standard applies. *Id*. at 1097. Further, "[e]ven if it may be appropriate to seal a document in its entirety, a party should still redact records whenever possible." *Craig v. Am. Tuna, Inc.*, No. 22-cv-00473-RSH-MSB, 2023 U.S. Dist. LEXIS 211558, at *3 (S.D. Cal. Nov. 28, 2023) (citing *Kamakana*, 447 F.3d at 1183).

"In general, 'compelling reasons' sufficient to outweigh the public's interest in disclosure and justify sealing court records exist when such 'court files might have become a vehicle for improper purposes,' such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets." *Kamakana*, 447 F.3d at 1179 (quoting *Nixon*, 435 U.S. at 598). In turn, the lower "good cause" standard requires a "particularized showing" that "specific prejudice or harm will result" if the information is disclosed. *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1210–11 (9th Cir. 2002); *see also* Fed. R. Civ. P. 26(c). In the context of sealed materials attached to a discovery motion unrelated to the merits of a case, "a party need only satisfy the less exacting 'good cause' standard." *Ctr. for Auto Safety*, 809 F.3d at 1097; *see also Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33 (1983) ("Much of the information that surfaces during pretrial discovery may be unrelated, or only tangentially related, to the underlying cause of action. Therefore, restraints placed on discovered, but not yet admitted, information are not a restriction on a traditionally public source of information.").

Exhibit 8 supports IV's Motion to Compel, a non-dispositive motion unrelated to the merits of the underlying claim, and as such, IV and Qualcomm need satisfy only the less-exacting "good cause" standard to justify sealing this exhibit. *See Ctr. for Auto Safety*, 809 F.3d at 1097. Here, Qualcomm confirms that Exhibit 8 contains Qualcomm's proprietary information consisting of "references to software build IDs that identify specific versions of Qualcomm confidential software and source code . . . with file paths showing the location of that confidential software and source code on Qualcomm's source code review computer." ECF No. 9 at 2–3. Further, Exhibit 8 discloses "information pertinent to Qualcomm's relationship with its customers as well as technical information regarding the

3:25-cv-03197-DMS-VET

customers' products." *Id.* at 3. The information, Qualcomm asserts, "is treated as confidential within Qualcomm and by its customers," primarily because it "could be used to gain unauthorized access to Qualcomm trade secrets or confidential research." *Id.* at 3, 5. Qualcomm further explains that disclosure of this information could result in "unauthorized access to its highly confidential source code and research and development efforts," demonstrating good cause to seal Exhibit 8. *Id.* at 4–5. Having reviewed Exhibit 8, the Court agrees and finds that Qualcomm makes the requisite showing to support sealing Exhibit 8.

Accordingly, the Court **GRANTS** IV's Motion to Seal and **DIRECTS** the Clerk of the Court to file the unredacted copy of Exhibit 8 under seal. *See* ECF No. 6.

## IV.   CONCLUSION

Based on the foregoing, the Court hereby **DENIES** the Motion to Compel and **GRANTS** the Motion to Seal.

**IT IS SO ORDERED**.

Dated: July 1, 2026

_____
Hon. Valerie E. Torres
United States Magistrate Judge

3:25-cv-03197-DMS-VET